IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARISOL CASANOVA-GUZMÁN<br><br>Plaintiff   (Pro Se)<br><br>v.<br><br>DEPARTMENT OF JUSTICE OF THE COMMONWEALTH OF PUERTO RICO.; WANDA VÁZQUEZ GARCED-SECRETARY OF PUERTO RICO DEPARTMENT OF JUSTICE (IN HER OFFICIAL AND PERSONAL CAPACITIES) INCLUDING LA SOCIEDAD DE BIENES GANANCIALES DE VÁZQUEZ GARCED Y JOHN DOE.; JOSÉ V. ALVARDO MARTÍNEZ-DIRECTOR OF HUMAN RESOURCES DIVISION (IN HIS OFFICIAL AND PERSONAL CAPACITIES) INCLUDING LA SOCIEDAD DE BIENES GANANCIALES DE ALVARADO MARTÍNEZ Y JOHN DOE.; MELISSA VÁZQUEZ SANDOVAL-PROSECUTOR IN CHARGE OF THE SAN JUAN PROSECUTORS OFFICE (IN HER OFFICIAL AND PERSONAL CAPACITIES) INCLUDING LA SOCIEDAD DE BIENES GANACIALES DE VÁZQUEZ SANDOVAL Y JOHN DOE.; MARILÚ CINTRÓN CASADO-DIRECTOR OF THE COMPENSATION AND SERVICES TO VICTIMS AND WITNESSES OF CRIME OFFICE (IN HER OFFICIAL AND PERSONAL CAPACITIES) INCLUDING LA SOCIEDAD DE BIENES GANANCIALES DE CINTRÓN CASADO Y JOHN DOE.; CARLOS QUIÑONES LÓPEZ-SUBDIRECTOR OF THE COMPENSATION AND SERVICES TO VICTIMS AND WITNESSES OF CRIME OFFICE (IN HIS OFFICIAL AND PERSONAL CAPACITIES) INCLUDING LA SOCIEDAD DE BIENES GANANCIALES DE QUIÑONES LÓPEZ Y JOHN DOE.; JANE DOE; JOHN DOE, INSURANCE AGENCY A, B, C.<br><br>Defendants | CIVIL RIGHTS VIOLATIONS UNDER AMERICANS WITH DISABILITIES ACT AND RETALIATION COMPLAINT AND DEMAND FOR JURY TRIAL<br><br><br><br>CIVIL ACTION NO. 18-1197 (JAG) |

**COMPLAINT**

AL HONORABLE TRIBUNAL:

    Comparece la parte demandante por derecho propio y respetuosamente expone, alega y solicita:

- 1 -

## I. STATEMENT OF JURISDICTION

1. Esta acción ha sido traída por la parte demandante, Marisol Casanova-Guzmán, (de ahora en adelante "demandante"), contra el Departamento de Justicia del Estado Libre Asociado de Puerto Rico y et. al., (de ahora en adelante "demandados) para hacer valer las provisiones estatutarias y regulatorias del Título I de la "Americans with Disabilities Act of 1990", según enmendada, (ADA), 42 U.S.C. §12111 et seq., la cual incorpora a través de 42 U.S.C. §12117 los poderes, remedios y procedimientos a establecerse en el Título V, sección 503 del Acta, 42 U.S.C. §12203 y del Título VII del Acta de Derechos Civiles de 1964, según enmendada, 42 U.S.C. §2000e-5.

2. Que esta Honorable Corte tiene jurisdicción de la acción bajo 42 U.S.C. §2000e-5(f), 28 U.S.C. §§1331 y 1345. Que esta Honorable Corte tiene la autoridad de emitir una sentencia declaratoria basada en 28 U.S.C. §§2201 y 2202, en adición, tiene la autoridad de otorgar alivio equitativo y daños monetarios basado en 42 U.S.C. §12117.

## II. STATEMENT OF THE PARTIES

3. La parte demandada, Departamento de Justicia del Estado Libre Asociado de Puerto Rico es una agencia creada bajo las leyes del Estado Libre Asociado de Puerto Rico.

4. La parte demandada es una persona dentro del significado definido en 42 U.S.C. §12111(7) y 42 U.S.C. §2000e(a).

5. La parte demandada es un empleador (patrono) dentro del significado definido en 42 U.S.C. §§12111(5) y 2000e(b), y es es una entidad cubierta dentro del significado definido en 42 U.S.C. §12111(2) y 29 C.F.R. §1630.2.

6. La parte codemandada Wanda Vázquez Garced es la Secretaria de Justicia del Departamento de Justicia del Estado Libre Asociado de Puerto Rico desde el mes de enero de 2017. Es mayor de edad. Está casada.

7. El codemandado José V. Álvarez Martínez es el Secretario Auxiliar de Recursos Humanos del Departamento de Justicia del Estado Libre Asociado de Puerto Rico. Es mayor de edad.

8. La parte codemandada Melissa Vázquez Sandoval es la Fiscal de Distrito de la Fiscalía de San Juan del Departamento de Justicia del Estado Libre Asociado de Puerto Rico desde el mes de enero de 2017. Es mayor de edad. Está casada. Su labor es la supervisión de Fiscales que trabajan casos en el área criminal. No tiene autoridad alguna en ley para intervenir en las áreas administrativas y operacionales de la Oficina de Compensación y Servicios a Víctimas y Testigos de Delito del Departamento de Justicia.

9. La codemandada Marilú Cintrón Casado es la Directora de la Oficina de Compensación y Servicios a Víctimas y Testigos de Delito del Departamento de Justicia del Estado Libre Asociado de Puerto Rico desde el 16 de febrero de 2017. Es mayor de edad.

10. El codemandado Carlos Quiñonez López es el Sub-Director de la Oficina de Compensación y Servicios a Víctimas y Testigos de Delito del Departamento de Justicia del Estado Libre Asociado de Puerto Rico desde enero de 2017. Es mayor de edad. Está casado.

11. Jane Doe son aquellas empleadas involucradas en la presente demanda de las cuales se desconoce el nombre y el puesto que ocupan.

12. John Doe son aquellos empleados involucrados en la presente demanda de los cuales se desconoce el nombre y el puesto que ocupan.

13. La Agencia Aseguradora A, B, C., son aquellas aseguradoras que tienen contrato con el Departamento de Justicia del Estado Libre Asociado de Puerto Rico.

14. La parte demandante, Marisol Casanova-Guzmán, es una persona con impedimento dentro del significado definido en 42 U.S.C. §12102 y 29 C.F.R. §1630.2. La señorita Casanova-Guzmán es parapléjica, utiliza silla de ruedas de forma permanente para movilizarse y está limitada sustancialmente en las actividades mayores del diario vivir como caminar.

15. Como punto relevante, en todo momento, en esta demanda, la parte demandada y los codemandados, en todo momento, tienen pleno conocimiento que Casanova-Guzmán es una persona con impedimento y que utiliza una silla de ruedas de manera permanente para movilizarse.

16. Como punto relevante, en todo momento, en esta demanda, Casanova-Guzmán fue empleada por la parte demandada como Coordinadora Regional de la División de Asistencia a Víctimas y Testigos hasta el 6 de diciembre de 2017. Que hasta el 31 de diciembre de 2016 su única Jefa lo fue la Dra. Sonia Sierra Rivera la cual fungió como Directora de la Oficina de Compensación y Servicios a Víctimas y Testigos de Delito del Departamento de Justicia del Estado Libre Asociado de Puerto Rico.

17. Desde, aproximadamente, el año 2001 hasta febrero 2009 Casanova-Guzmán laboró para la parte demandada en la Fiscalía de San Juan (ubicada en el Tribunal de Hato Rey).

18. Como punto relevante, en todo momento, en esta demanda, durante el mes de marzo de 2009 estando Casanova-Guzmán (convaleciendo aún de fracturas bilaterales en la parte baja de su cuerpo y con inmovilizadores todavía en sus piernas) fue trasladada a un edificio que no cumple (antes ni actualmente) con los requerimientos de la "Americans with Disabilities Act" de 1990, según enmendada, aun la parte demandada estando en conocimiento de esto. Casanova-Guzmán radicó una querella por estos hechos ante la Equal Employment Opportunity Commission (EEOC) la cual determinó causa razonable y el caso fue referido al Departamento de Justicia de Estados Unidos el cual tuvo que tomar la decisión de demandar en la Corte Federal Distrito de Puerto Rico al Departamento de Justicia del Estado Libre Asociado de Puerto Rico. Posteriormente se llegó a un acuerdo extrajudicial entre las partes redactando un "Consent Decree" con la anuencia de la Corte Federal.

19. Desde el periodo de marzo de 2009 hasta junio de 2013 fueron años muy difíciles a nivel físico y emocional. Me intervinieron teléfonos, correos electrónicos, me perseguían, me vigilaban, entre otros. Informé a los abogados del Departamento de Justicia de Estados Unidos, pero me indicaron que con la información que les estaba proveyendo ellos no podían hacer nada.

20. Desde el periodo de julio de 2013 hasta enero 2017 los incidentes mencionados en la premisa #19 disminuyeron debido a que el partido de gobierno cambió y las personas que originaron los

mencionados eventos ya no estaban en puestos de poder. Esto no quiere decir que no hubo incidentes porque se reportó un incidente, pero los mismos fueron mínimos.

21. En enero de 2017 la Fiscal de Distrito Melissa Vázquez Sandoval fue transferida a la Fiscalía de San Juan (fiscalía en la cual yo siempre había supervisado a los Técnicos de Asistencia a Víctimas y Testigos). Volvieron a comenzar los problemas y los incidentes de persecuciones, vigilancias, entre otros., pero de forma muchísimo más agresiva.

22. La Fiscal de Distrito de la Fiscalía de San Juan comenzó a intervenir en mis funciones como Coordinadora Regional en esa Fiscalía.

23. Todas las quejas relacionadas a las situaciones fueron llevadas a Recursos Humanos (SARH) y se discutían con los licenciados Christian Castro Plaza y Jesús M. Rosa. Todo esto desde enero de 2017. Llegó un momento en que la situación ya estaba intolerable y solicité una reunión con el Lcdo. Castro, el Lcdo. Rosa y el Lcdo. Carlos Quiñones López (Director Interino, en ese momento, de la Oficina de Compensación y Servicios a Víctimas y Testigos de Delito. Llorando les pedía que hicieran algo porque yo no quería pasar por lo mismo que en 2009 debido a que era un proceso sumamente doloroso. Nada concreto salió de esa reunión.

24. Los meses de febrero y marzo de 2017 los pasé bajo el Fondo del Seguro del Estado (FSE) debido a un aparatoso accidente laboral desde mi silla de ruedas el que me requirió varias hospitalizaciones y un inmovilizador por varias fracturas en mi pierna. Aun así, estando hospitalizada en el FSE me comuniqué en dos ocasiones con la nueva directora de la oficina para la cual laboro para darle conocimiento del por qué no me encontraba trabajando y otros asuntos.

25. Cuando a finales de marzo de 2017 me reporté al trabajo (aun con inmovilizador y fracturas) le envié un correo electrónico a la directora Marilú Cintrón Casado solicitándole reunirme con ella debido a que yo tenía unas particularidades que otros empleados no tenían y entendía que ella debía de tener conocimiento. Nunca contesto el mismo.

26. A partir de este momento en adelante la directora Cintrón-Casado a penas se comunicaba con las Coordinadoras Regionales y mucho menos conmigo. No proveía información vital para el

desempeño de nuestras funciones, sin embargo, la información si se la proveía al personal que supervisábamos y al personal administrativo de su confianza. Aunque sus palabras decían que nos reconocía como Coordinadoras Regionales sus acciones y actuaciones no eran compatibles con lo que decía.

27. Citó reuniones de Coordinación para el mismo edificio inaccesible el cual fue motivo de la demanda del año 2011. Se solicitó cambio de lugar a través de la Auxiliar Administrativo (en ese entonces) Yasiri y, aunque se le dio el mensaje, la señora Cintrón-Casado no cambió la reunión ni se comunicó conmigo. Volvió a citar otra reunión y al yo ver que no iba a cambiar el lugar de la reunión no asistí a la misma. Ya la humillación era bastante.

28. El 27 de abril de 2017 procedí a radicar una querella por discrimen por impedimento y represalia incluyendo la delegación de mis funciones a personal no autorizado.

29. El 28 de abril de 2017 pasé primero por Justicia para realizar unas gestiones y una persona que conoce de mi caso anterior me informó que, alegadamente, la Secretaria de Justicia, Lcda. Wanda Vázquez Garced, había impartido instrucciones en la División de Litigios Laborales para que todo documento relacionado a mi caso desapareciera. Lo notifiqué a personal del EEOC. Yo estuve como por una semana con una intranquilidad inmensa al no poder creer lo que me habían dicho. Ahí supe que las personas de esta administración eran capaces de hacer cualquier cosa por evitar que un empleado ejerciera su derecho en ley de utilizar los remedios provistos para reclamar y defender sus derechos y que eso les permitiera a la parte demandada ganar un caso.

30. En la primera visita que la directora Cintrón-Casado realizó a la Fiscalía de Fajardo (fiscalía en la que estoy ubicada físicamente de manera ilegal desde que ocurrió el incidente desde el 2009) compareció a esa reunión (a la cual los Coordinadores Regionales no se les solicitó estar presentes) el Sub-director, Lcdo. Carlos Quiñones López, la Auxiliar Administrativo de la División de Compensación, Jailyn; la propia directora Cintrón-Casado para reunirse con las Técnicos de Asistencia a Víctimas y Testigos, Yaditza Ruiz Dávila y Rosa M. Lozada Sánchez y se encontraba la Fiscal de Distrito de Fajardo, Lcda. Aracelis Pérez. Durante esa reunión, y

porque así me lo informaron las Técnicos Ruiz-Dávila y Lozada-Sánchez, al igual que la Fiscal de Distrito Lcda. Pérez se discutió abiertamente (en mi ausencia y sin mi permiso) sobre mi acomodo razonable y mi condición de salud. Todo esto en presencia de dos abogados conocedores de la ley. Una directora que tiene el deber de conocer la ley. Y que tanto los abogados como la directora saben que esos asuntos no se discuten con los empleados que superviso y menos con una empleada que no pertenece a nuestra División, la Auxiliar Administrativo, Jaylin.

31. Durante los meses de abril y mayo de 2017 se comenzó una "cacería de brujas" en contra de las Coordinadoras Regionales hasta un cuestionario ilegal se realizó y se obligó a todo el personal a contestarlo. Solicitando información discriminatoria, requiriendo información sobre el desempeño de los Coordinadores Regionales y utilizando métodos no aprobados en el Estado Libre Asociado de Puerto Rico ya que la misma se realizó a través del programa "on line Monkey Survey" poniendo en riesgo información confidencial del personal. No se le notificó a las Coordinadoras Regionales sobre el mismo hasta que un empleado me dio conocimiento a mí y como el envío fue por correo electrónico tenía "tracking" y al Cintrón-Casado percatarse fue en ese momento que le dio conocimiento a las Coordinadoras.

32. En todo momento se mantenía a las Coordinadoras Regionales en desconocimiento de información vital (tales como evaluación de empleados y recopilación y certificación de la asistencia de los empleados) para el desempeño de sus funciones y, a mí más todavía, Aun así se le proveía información a los Técnicos de Asistencia a Víctimas y Testigos (personal que supervisábamos) y a los Fiscales de Distrito y cuando estos últimos no hacían preguntas le teníamos que responder que no se nos había informado nada y desconocíamos, entre otras.

33. El 31 de mayo de 2017 me dirigí a la Fiscalía de San Juan para reunirme brevemente con las Técnicos de Asistencia a Víctimas y Testigos para discutir el itinerario de turnos. Hubo un error involuntario de mi parte en el mismo y les dije que me dieran un momento para arreglarlo. Cuando regresé a la oficina para retomar la reunión al cerrar la puerta aparecieron la Fiscal de

Distrito de San Juan, Vázquez-Sandoval y la directora Cintrón-Casado ambas se apostaron en el marco de la única puerta y yo estaba de espaldas a ambas. La directora Cintrón-Casado me informó que ella venía a participar de la reunión al igual que Vázquez-Sandoval comenzamos una discusión y les dije que con la Fiscal Vázquez-Sandoval yo no me iba a reunir porque ella no tenía que ver nada con los aspectos administrativos ni operacionales de nuestra oficina. La directora Cintrón-Casado siguió insistiendo y como lo que pretendían era humillarme cada vez más frente al personal que superviso le dije a Cintrón-Casado que si se querían reunir y que la Fiscal de Distrito estuviera presente pues que lo hicieran y que yo me iba por que no iba a estar en esa reunión. Al intentar salir del espacio angosto en el cual me encontraba me restringieron la libertad al pararse en el marco de la puerta con los brazos cruzados. En varias ocasiones pedí que me dejaran pasar y se negaban a hacerlo. Debido a que padezco de condiciones emocionales desde que comenzaron los eventos discriminatorios en el 2009, en ese momento el cuerpo comenzaba a ponerse helado con un frio insostenible, comencé a ponerme nerviosa, a temblar, a sudar, las palpitaciones en mi corazón se aceleraron de tal forma que sentía que iba a desfallecer en ese momento. En mi mente repetía una y otra vez: "Dios no permitas que me suceda esto aquí". Aun así, continuaba pidiendo permiso y no me dejaban pasar. Cuando sentí que iba a perder el control de mi cuerpo porque ya los dedos de las manos se me estaban doblando le grité a la Fiscal de Distrito Vázquez-Sandoval que ella era una abogada que ella sabía lo que estaba haciendo y que lo hacía de manera intencional. En ese mismo momento Cintrón-Casado dio un pequeño salto hacia el lado y dijo "ay, yo no soy la que está en el medio eso es ella" (refiriéndose a la Fiscal Vázquez-Sandoval). Si Cintrón-Casado no hubiese estado obstaculizándome el paso no hubiese tenido que dar un pequeño salto hacia el lado. Cuando eso sucedió entonces la Fiscal Vázquez-Sandoval dio un paso más al frente de mí y yo tuve que darle un poco hacia atrás a la silla de ruedas para proteger mi pierna que todavía tenía un inmovilizador por las fracturas. A todo esto cada vez que yo les pedía permiso para salir yo tenía la cabeza baja. Cuando Vázquez-Sandoval me hizo esa última afrenta levanté mi cabeza y al mirarla a su rostro tenía una sonrisa

en su boca mostrando toda la intencionalidad, las ganas de humillarme, la intención de denigrarme como persona y como profesional, el provocar una situación para provocarme y sobre todo para que yo perdiera el dominio propio. ¿Sabe lo que hizo Cintrón-Casado durante todo el incidente?…absolutamente NADA. Por el contrario fomentó, hizo comentarios y gestos como si estuviera en una pelea callejera, se le olvidó que es la directora de una oficina perdiendo el profesionalismo y la objetividad que requieren esos puestos, permitió que la situación llegara al punto que llegó por que esa era su intención. Es vergonzoso que dirija una oficina que trabaja con el dolor humano y que no tenga la capacidad ni las destrezas para trabajar situaciones como la sucedida. Finalmente, la Fiscal Vázquez-Sandoval se hecho hacía atrás y me dijo: "te voy a decir algo a esta Fiscalía tú no vuelves a entrar sin mi permiso". Le dije que ella no tenía la autoridad para negarme la entrada a la Fiscalía cuando yo tenía un personal allí ubicado que tenía que supervisar. Volvió a repetirme que no iba a entrar a la Fiscalía hasta tanto no me reuniera con ella y que le iba a dar instrucciones a todo el personal para que no me dejaran entrar. La reté a que lo intentara porque entonces no solo iba a hacer ella sino el Departamento de Justicia quien iba a pagar las consecuencias legales por prohibirme la entrada a mi lugar de trabajo. Cuando salió inmediatamente salí de la oficina y llamé a la oficina del Lcdo. Castro en Recursos Humanos, pero su secretaria me indicó que no se encontraba en ese piso al momento. Le dije que solo le dijera que me habían prohibido la entrada a la Fiscalía de San Juan que él lo iba a entender. Aun con todo lo que había sucedido la directora Cintrón-Casado quiso continuar la reunión y nuevamente comenzó la discusión. Cuando, alegadamente, se terminó la reunión le pedí a una de las Técnicos que me acompañara a su oficina a recoger mis pertenencias, al yo salir de la oficina, le indicó a la Técnico que la reunión no había terminado y cerró la puerta en mi cara dejándome fuera de la reunión. Por el estado físico y emocional en el que me encontraba tuve que llamar a una amiga para que me acompañara a recibir asistencia médica esa misma tarde. Al siguiente día tuve referido de urgencia a otro médico y posteriormente notifiqué al Investigador Federal, Luis Calzada, del EEOC sobre lo sucedido. Las personas que me persiguen, vigilan, tienen

intervenidos mis teléfonos intensificaron sus intervenciones hacia mi persona convirtiendo todo esto en una estrategia de intimidación de las más bajas. Días después se radicó una querella en el Federal Bureau of Investigation (FBI), oficina de Puerto Rico, sobre estos hechos.

34. Lo que han causado a mi vida desde el 2017 ha sido un estado de terror en el que pocos sobreviven. Las consecuencias emocionales han sido devastadoras para mí. Han exacerbado condiciones pre-existentes y han hecho que desarrolle nuevas condiciones. A nivel físico todo mi sistema corporal se ha visto afectado. Como resultado de los actos deliberados, intencionales e ilegales de los demandados me han causado un daño sustancial en el cual la frustración, la impotencia, la indignación, la gran vergüenza causada, el extenso daño a mi reputación y honor, el quebrantamiento de mi dignidad como ser humano y como profesional han sido mancillados a niveles que jamás imaginé experimentar en mi vida. Redundando todo esto en síntomas emocionales que ya se han convertido en condiciones mentales. Eso no tiene perdón alguno.

35. En el mes de julio de 2017 comparecía a la Fiscalía de San Juan y el Agente de la Policía Villanueva (retén de la Fiscalía) no me quería dejar pasar. Alguien abrió la puerta y entré. El Agente Villanueva me indicó que él tenía instrucciones desde hace tiempo que no se me permitiera la entrada a la Fiscalía. Ese día la Fiscal Vázquez-Sandoval estaba ausente y el Agente fue a preguntarle al Fiscal a cargo e indicó que le contestaron que él (Fiscal) no se iba a meter en esos asuntos. Realicé las tareas que iba a hacer y luego el Agente Villanueva se disculpó conmigo.

36. Mientras todo esto sucedía estaba bajo estudios médicos por otras condiciones de salud que tengo y todo lo tenía alterado.

37. Al pasar el huracán Irma y María se activó a los empleados públicos para finales de septiembre de 2017 para comenzar labores. Con cuatro Fiscalías a cargo en lugares en los cuales el impacto de los huracanes había sido devastador así me dirigí a realizar mi labor, al igual que conocer la situación en la que se encontraban algunas víctimas que previo al huracán ya tenían una situación difícil. La primera semana todo corrió normal. Ya para la segunda semana en adelante comenzó a

escasear el diésel para las plantas eléctricas. Todas las Fiscalías que yo supervisaba están ubicadas en un segundo piso. Así que el resto de los empleados podían subir por las escaleras pero yo no. Le pregunté en varias ocasiones a la Fiscal de Distrito de Fajardo, Lcda. Aracelis Pérez si ella había notificado a nivel central lo referente a la necesidad del diésel e indicó que sí. Cada vez que iba a las Fiscalías eran los Técnicos los cuales me informaban de situaciones que les habían informado a los Fiscales de Distrito.

38. Para principios del mes de octubre de 2017 me dirigí a la Fiscalía de San Juan para conocer el estatus de las Técnicos. Los Alguaciles del Tribunal me indicaron que el Tribunal iba a estar cerrado por mucho tiempo, que fuera al Centro de Investigaciones y Denuncias (CMID) porque entendían que estaban ubicadas allá. Llegué allí y estaba cerrado y le pregunté a unos agentes de la Policía y me indicaron que estaban ubicados en la División de Asuntos Juveniles. Me dirigí allá y hablé con la Técnico Carmen M. Berríos Rivera le di un documento a firmar para las instrucciones de manejo de los expedientes durante la emergencia del huracán y me indicó que ella no podía firmar ese documento sorprendida la pregunté por qué y me indicó que la directora Cintrón-Casado había dado instrucciones de que no iban a responder a mi sino a ella (directora) le pregunté que desde cuando se habían dado esas instrucciones y la Técnico Berríos me informó "desde que había ocurrido el incidente en la Fiscalía. Eso fue el 31 de mayo de 2017.

39. Desde ese momento en adelante la delegación de mis funciones que habían realizado de manera sutil se convirtió en una de manera descarada. La Técnico Berríos quien era una simple Técnico comenzó a realizar parte de mis funciones. Realicé varios escritos incluyendo uno bastante serio pero ni caso les hizo el Secretario Auxiliar de Recursos Humanos, José V. Alvarado Martínez, el Lcdo. Jesús M. Rosa, director de la Oficina de Cumplimiento y el Lcdo. Christian Castro, director de la División de Litigios Laboral. Estando bajo tratamiento médico me informaron que había Técnicos nuevos que iban a comenzar a trabajar. Ni la directora Cintrón-Casado ni el sub-director Lcdo. Carlos Quiñones López me informaron nada sobre el particular. Me llegué a reunir con el Lcdo. Carlos Quiñones López para indicarle la dificultad que tenía para supervisar los Técnicos al

no poder subir a sus áreas de trabajo y peor aún que estuvieran contratando personal nuevo que no me informaran y que no me permitieran adiestrarlos de manera adecuada. El Lcdo. Quiñones nunca realizó ni el mínimo esfuerzo por notificarme de ninguna forma de cuando iban a comenzar el resto de los empleados. Sin embargo, el Lcdo. Quiñones si iba a las fiscalías que tengo a cargo de llevar documentos.

40. Soy la única empleada que tiene todo el Departamento de Justicia que está en silla de ruedas y no tuvieron la previsión de tener en consideración mi situación como empleada y mucho menos como las funciones supervisión que realizaba ante la emergencia del huracán iban a ser impactadas.

41. Intenté en tres ocasiones de contactar al Secretario Auxiliar de Recursos Humanos, José V. Alvarado Martínez para que dijera que era lo que estaba pasando conmigo pero nunca estuvo disponible para mí. Cada vez que iba a la oficina central en Miramar me decían los agentes que no podía subir por la rampa hacia el edificio Anexo porque había un tronco grande de un árbol obstaculizando la rampa y durante esos meses nunca lo quitaron.

42. A principios del mes de noviembre 2017 y ya extremadamente agotada comparecí a la nueva ubicación de la oficina de Recursos Humanos. Esperando allí para ser atendida y en presencia de una compañera de trabajo había una joven que nos habían indicado que comenzaba a trabajar en Asistencia a Víctimas. Le dimos la bienvenida y le preguntamos en donde iba a estar laborando. Para nuestra sorpresa nos dijo que había sido contratada como Coordinadora de la Fiscalía de San Juan y yo le contesté que yo era la Coordinadora de la Fiscalía de San Juan. Le pregunté que de donde ella venía e indicó que de la oficina del District Attorney's en Manhattan, New York. Más que sorprendidas le pregunte que cuanto llevaba trabajando allá e indicó que 16 años. Le pregunté que como era posible que dejara un trabajo tan estable y sobre todo con un sueldo que jamás se iba a comparar con el sueldo de Puerto Rico y bajo la cabeza y casi susurrando contestó que era que tenía a su familia enferma. Que eran dos Coordinadoras y que no estaba segura de las funciones que iba a realizar debido a que la habían entrevistado en el mes de agosto de 2017. La

otra compañera que estuvo presente me indico que ahora le hacía sentido el que la Técnico de Asistencia a Víctimas y Testigos, Carmen M. Berríos Rivera fuera la que estuviera ofreciendo los adiestramientos a los nuevos empleados una tarea que es estrictamente de los Coordinadores Regionales y ninguno de estos se les informó para ofrecerlos.

43. El 6 de diciembre de 2017 se redactó comunicación dirigida a mi indicando que ya no iba a ser Coordinadora Regional y que pasaría a ser Técnico de Asistencia a Víctimas y Testigos, que me bajaban el sueldo y que me trasladaban a la Fiscalía de Fajardo en la cual estoy ubicada desde el año 2009 y de manera ilegal en las comunicaciones indicaron que era un destaque por necesidad de servicio. Conociendo todos que esos destaques tienen un tiempo de expiración. Cuando realmente es una represalia por utilizar los mecanismos provistos por ley para reclamar mis derechos.

44. Cuando fueron a entregar la comunicación a mi casa mi señora madre se puso extremadamente nerviosa y, además, cuenta con condiciones crónicas de salud por lo que tuvo que recibir atención médica ese día.

45. Para el mes de febrero de 2018 me enteré que la persona que pasó a sustituirme en el puesto de Coordinadora Regional lo es Carmen M. Berríos Rivera. La persona que mientras fue Técnico de Asistencia a Víctimas y Testigos se le delegaron parte de mis funciones no teniendo autoridad en ley para llevarlas a cabo. De otra parte, a Berríos-Rivera se le han realizado escritos por quejas de participantes en su contra, incluyendo señalamientos sumamente serios como decirle a los participantes lo que tienen que decir en corte, hacer croquis de los eventos y aceptar que lo hace con todos sus participantes asignados. Hay escritos sobre esto.

46. Hay un asunto que voy a mencionar pero que se está atendiendo el EEOC ocurrido el mes de marzo de 2018. Posterior a esta comunicación me llegó una carta del Secretario Auxiliar de Recursos Humanos quitándome el acomodo razonable que tengo desde el 2006 y solicitándome que lleve evidencia médica que sustente ese acomodo. Yo llevo casi toda mi vida en una silla de

ruedas, no puedo caminar, entre a trabajar al gobierno en silla de ruedas y moriré en silla de ruedas.

### III. STATEMENT OF CLAIMS

47. Todas las alegaciones de los párrafos precedentes se hacen formar parte y se incorporan a esta sección.

48. ADA y sus regulaciones de implementación definen el discrimen en contra de un individuo cualificado basado en su impedimento. 42 U.S.C. §12112(b)(5)(A); 29 C.F.R. §1630.9.

49. En el año 2011 se realizó un "Consent Decree" en el cual (con fuerza de ley y orden de Juez) se prohibió al Departamento de Justicia del Estado Libre Asociado de Puerto Rico no discriminar por razón de impedimento en el empleo contra ningún individuo con impedimento cobijado por las leyes federales como el Título 1 de la ADA. Este "Consent Decree" fue específicamente redactado para la reclamante en esta demanda, Marisol Casanova Guzmán, quien hoy tiene que recurrir al Honorable Tribunal buscando auxilio porque por segunda ocasión mi patrono, Departamento de Justicia del Estado Libre Asociado de Puerto Rico vuelve a incumplir con las leyes federales que cobijan a los empleados cualificados con impedimento discriminando contra mí.

50. El Departamento de Justicia del Estado Libre Asociado de Puerto Rico no puede asumir la defensa de que desconocía en primer lugar, porque mi impedimento es sumamente visible y en segundo lugar, porque ya hay una demanda que se radicó por el Departamento de Justicia de Estados Unidos en el año 2011, hubo adiestramiento a todo el personal de supervisión y se les requirió que todo personal de nuevo ingreso sea adiestrado sobre ADA.

51. Aun sabiendo que la parte demandante, Marisol Casanova Guzmán, tiene un impedimento y conociendo que el Departamento de Justicia del Estado Libre Asociado de Puerto Rico es quien mejor conoce las leyes estatales y federales continuaron con el patrón de discrimen y represalias por haber utilizado los remedios que provee la ley para defender y reclamar sus derechos.

52. La parte demandante, Marisol Casanova Guzmán, ha sufrido y continua sufriendo daños como resultado directo del discrimen por la parte demandada, incluyendo pero no limitándose a: daño psicológico, daños emocionales, humillación, serias y graves angustias y sufrimientos mentales, inestabilidad, desasosiego, exacerbó condiciones pre-existentes y desarrolló otras. No puede estar sin tratamiento médico continuo y no se sabe si pueda volver a recuperar.

53. La parte demandada ha discriminado y ha tomado represalias contra, Marisol Casanova Guzmán fallando en proveer acomodo razonable debido a su conocido impedimento. En violación a 42 U.S.C. §12112(a), 29 C.F.R. §1630.4, 42 U.S.C. §12112(b)(5)(A) y 29 C.F.R. §1630.9.

## IV. STATEMENT OF RELIEF

a) Declare CON LUGAR esta demanda y encuentre a la parte demandada y codemandada responsable por haber violado las leyes de Puerto Rico y federales de los Estados Unidos de América.

b) Ordene a la parte demandada a no discriminar contra individuos con impedimentos cualificados en relación a, pero no limitado a: traslados de empleo, procedimientos de aplicaciones, contratación, ascensos, remoción de empleados, compensación salarial, adiestramiento, y otros términos, condiciones y privilegios de empleo.

c) Ordenar a la parte demandada, por segunda ocasión, remover todas las barreras que no permitan la accesibilidad en la oficina (División de Asistencia a Víctimas y Testigos) del edificio central del Centro de Investigaciones y Denuncias de San Juan y en las oficinas centrales del Departamento de Justicia edificio Anexo en el cual están los servicios primarios a los empleados.

d) Ordenar a la parte demandada, por segunda ocasión, adiestrar a supervisores y personal de recursos humanos sobre los requerimientos de ADA, incluyendo, pero no limitándose a, la obligación de proveer acomodo razonable a empleados con impedimentos.

e) Proveer suficiente alivio remediativo para que la parte demandante, Marisol Casanova Guzmán pueda compensar las pérdidas que ha sufrido como resultado de la discriminación contra ella,

incluyendo el otorgar todos los acomodos necesarios y cualquier otro no-discriminatorio y apropiada medidas para superar los efectos que la discriminación y las represalias que ha sufrido.

f) Ordene al patrono que reponga en su empleo con el mismo sueldo a la reclamante y que cese y desista del acto de discriminar contra la parte demandante por razón de su impedimento y que cese y desista todo acto de represalia en su contra, en y fuera de su trabajo, por la reclamante haber utilizado los remedios provistos en ley para defender y reclamar sus derechos.

g) Condene al Departamento de Justicia del Estado Libre Asociado de Puerto Rico a indemnizar a la parte demandante por una cantidad no menor a $30,000,000.00 (daños, violación de derechos civiles) por haber discriminado por impedimento contra la demandante por segunda ocasión, por tomar represalias por la reclamante haber utilizado los remedios provistos en ley para defender y reclamar sus derechos; y por haber utilizado el puesto y poder que les otorga el Estado Libre Asociado de Puerto Rico excediéndose en actuaciones contrarias a las leyes de Puerto Rico y las leyes federales de los Estados Unidos de América. Por no tomar acciones correctivas y disciplinarias contra aquellos empleados que de manera intencional y fuera de sus funciones cometieron actos contrarios a la ley. Causándole daños mentales, emocionales y físico que no sabemos si se pueda recuperar.

h) Condene a la codemandada Wanda Vázquez Garced a indemnizar a la parte demandante por una cantidad no menor de $5,000,000.00 por haber discriminado por impedimento, por tomar represalias por la reclamante haber utilizado los remedios provistos en ley para defender y reclamar sus derechos; y por haber utilizado el puesto y poder que les otorga el Estado Libre Asociado de Puerto Rico excediéndose en actuaciones contrarias a las leyes de Puerto Rico y las leyes federales de los Estados Unidos de América. Causándole daños mentales, emocionales, físicos y monetarios de los cuales no se conoce si se pueda recuperar.

i) Condene al codemandado José V. Alvarado Martínez a indemnizar a la parte demandante por una cantidad no menor a $5,000,000.00 por haber discriminado por impedimento, por tomar represalias por la reclamante haber utilizado los remedios provistos en ley para defender y

reclamar sus derechos; y por haber utilizado el puesto y poder que les otorga el Estado Libre Asociado de Puerto Rico excediéndose en actuaciones contrarias a las leyes de Puerto Rico y las leyes federales de los Estados Unidos de América. Causándole daños mentales, emocionales, físicos y monetarios de los cuales no se conoce si se pueda recuperar.

j) Condene a las codemandadas Melissa Vázquez Sandoval y Marilú Cintrón Casado a indemnizar a la parte demandante por una cantidad no menor a $5,000,000.00 (a cada una de las codemandadas) por haber discriminado por impedimento, por tomar represalias por la reclamante haber utilizado los remedios provistos en ley para defender y reclamar sus derechos; y por haber utilizado el puesto y poder que les otorga el Estado Libre Asociado de Puerto Rico excediéndose en actuaciones contrarias a las leyes de Puerto Rico y las leyes federales de los Estados Unidos de América. Causándole daños mentales, emocionales, físicos y monetarios de los cuales no se conoce si se pueda recuperar.

k) Condene al codemandado Carlos Quiñones López a indemnizar a la parte demandante por una cantidad no menor a $5,000.000.00 por haber discriminado por impedimento, por tomar represalias por la reclamante haber utilizado los remedios provistos en ley para defender y reclamar sus derechos; y por haber utilizado el puesto y poder que les otorga el Estado Libre Asociado de Puerto Rico excediéndose en actuaciones contrarias a las leyes de Puerto Rico y las leyes federales de los Estados Unidos de América.. Causándole daños mentales, emocionales, físicos y monetarios de los cuales no se conoce si se pueda recuperar.

l) Condene a Jane Doe y John Doe Condene a indemnizar a la parte demandante por una cantidad no menor a $5,000,000.00 por haber discriminado por impedimento, por tomar represalias por la reclamante haber utilizado los remedios provistos en ley para defender y reclamar sus derechos; y por haber utilizado el puesto y poder que les otorga el Estado Libre Asociado de Puerto Rico excediéndose en actuaciones contrarias a las leyes de Puerto Rico y las leyes federales de los Estados Unidos de América. Causándole daños mentales, emocionales, físicos y monetarios de los cuales no se conoce si se pueda recuperar.

- 18 -

m) Condene a los demandados y codemandados al pago de las costas del litigio y los honorarios en caso de así ser incluidos en el proceso.

n) Otorgar cualquier remedio o alivio adicional que la justicia requiera y la Honorable Corte así lo determine.

## V. JURY DEMAND

La parte demandada, Marisol Casanova Guzmán, demanda que se lleve a cabo un juicio por jurado.

Respetuosamente sometido (por derecho propio) en San Juan, Puerto Rico; hoy, 9 de abril de 2018.

_____
Marisol Casanova-Guzmán
Address:
Calle 7 I-11
Urb. Brisas del Mar
Luquillo, P.R. 00773